[Nos. 19743-0-II; 19744-8-II.   Division Two.   May 2, 1997.]

*In the Matter of the Welfare of* M.S.S.
*In the Matter of the Welfare of* M.E.S.

*Peter B. Tiller* and *Tiller, Fagerness & Wheeler,* for appellant (appointed counsel for appeal).

*H. Steward Menefee, Prosecuting Attorney,* and *Jennifer L. Wieland, Deputy,* for respondent.

ARMSTRONG, J. — William S. appeals orders terminating his parental rights as to his two children, M.S.S. and M.E.S. He contends that the trial court lacked jurisdiction because the Department of Social and Health Services (the Department) failed to comply strictly with the notice provisions of the Indian Child Welfare Act. A premature notice sent to the wrong administrative office and the failure to wait 10 days after notifying a potentially interested Native American tribe before commencing the termination proceeding do not constitute substantial compliance with the act. We therefore remand to the trial court for proper notice under the act.

## FACTS

William S. and Shawna S. are the parents of M.S.S. and M.E.S. M.S.S. was born in December 1992, and found dependent in September 1993. M.E.S. was born in January 1994, and found dependent in March 1994. The Department subsequently sought termination of the parental rights of both William S. and Shawna S.

The mother and father did not comply with the recommendations contained in the dependency orders. Furthermore, although the father had abstained from drugs and alcohol, he used "crank" again in July 1994. He apparently was under the influence of the drug when he committed first degree murder and was sentenced to 32 years in prison. Since being incarcerated, the father has not sent any letters or financial support to the children, nor contacted social workers about the children.

Dale McKee, a Department social worker, testified that he did not know where the mother was, not having heard from her since December 1994. Wynona Jamison, a Department manager and member of the Local Indian Child Welfare Advisory Committee (LICWAC), testified that the mother has a card indicating that she is a member of an Alaskan tribe or corporation, and is 3/8th Eskimo and otherwise 1/8th Indian. The father is not Native American or Eskimo.

McKee testified that in October or November 1993, after dependency had been established for M.S.S., he sent a notice to Jimmy Clemons, a Bureau of Indian Affairs (BIA) social worker, at the Bureau office in Alaska. According to McKee, Native Alaskans born after 1971 who do not have a certain percentage of Indian blood are not identified with a specific corporation. McKee did not know which corporation to contact about the mother and he requested that Clemons research the issue. Clemons never responded to this inquiry.

A BIA social worker later informed McKee that the mother and children might be members of the Chitina corporation in Alaska. McKee notified the Chitina corporation, by sending a petition, a notice and summons, and a family tree, and asking if the mother and children were members. In late March 1995, he received a letter from the Chitina stating that the mother and children were not on the active tribal enrollment. McKee testified that he then did not know what to do, that he had "hit a stone wall."

In the middle of June 1995, William's attorney wrote McKee that the Cook Inlet Indian Tribe had identified Ramona Taylor, the children's maternal grandmother, as an enrolled member of their corporation. McKee contacted Vincent Lekanoff, a social services counselor with the Cook Inlet tribe, who requested additional information. The next day, Friday, June 23, 1995, McKee sent by overnight mail an inquiry to Lekanoff as to whether the children are considered Native American under the Indian

Child Welfare Act (ICWA). McKee was unsure whether he sent the information by certified mail. On Monday, June 26, 1995, Lekanoff informed McKee that the tribe did not want to be involved and would not intervene in the proceedings. Lekanoff did not state whether the children were enrollable.

The court held the termination hearing on June 30, 1995. McKee testified that when the Department knows the tribal identity, it sends a notice to both the tribe and the BIA. The Department, however, did not know the tribal identity after the Chitina proved incorrect. The mother did not know what corporation with which she was involved and could not provide the names of any family members with whom McKee could talk about tribal membership. The trial court found that the Department had made every effort to comply with the ICWA, and it concluded that the provisions of the act had been met. The trial court then terminated both parents' rights and the father appealed.

## ANALYSIS

### Notification under the Indian Child Welfare Act

■ The father argues that because the Department did not properly comply with the ICWA notice provisions, the trial court lacked jurisdiction to terminate his parental rights.[1] Congress enacted the ICWA to counteract the large-scale separations of Native American children from their families, tribes, and culture through adoption and foster care placement in non-Native American homes. *Matter of Adoption of Crews*, 118 Wn.2d 561, 567, 825 P.2d

---

[1] The father, although a non-Indian, has standing to challenge the termination under the ICWA. *See In Interest of H.D.*, 11 Kan. App. 2d 531, 729 P.2d 1234, 1236 (1986). The act provides that "any parent or Indian custodian from whose custody such child was removed . . . may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of [the ICWA]." 25 U.S.C. § 1914. The act defines a "parent" as any biological parent. 25 U.S.C. § 1903(9). Here, the father is a parent from whose custody the children were removed and, therefore, may seek to invalidate the termination action.

305 (1992). The ICWA provides substantive and procedural safeguards to prevent the unwarranted separations of Native American children from their families and culture. *Crews*, 118 Wn.2d at 568.

■ As the *Kahlen W.* court noted,

> The Act is explicit as to what is required. Ascertaining the correct notice procedure when a child's status is uncertain is not difficult. A quick glance at the language of the statute and its attendant regulations provides the answer.

*In re Kahlen W.*, 233 Cal. App. 3d 1414, 285 Cal. Rptr. 507, 514 (1991). The ICWA requires that in any involuntary child custody proceeding involving an Indian child, the State shall notify the parents and the Indian child's tribe, by registered mail with return receipt, of the pending proceedings and the tribe's right to intervene. 25 U.S.C. § 1912(a).[2] The Indian status of the child need not be certain. *Kahlen W.*, 285 Cal. Rptr. at 511. Notice is required whenever the court knows or has reason to

---

[2]The ICWA, 25 U.S.C. § 1912(a), provides:

"(a) Notice; time for commencement of proceedings; additional time for preparation"

"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least 10 days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding."

25 U.S.C. § 1912(a). The ICWA defines an "Indian Child" as a minor who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); *See also Adoption of M,* 66 Wn. App. 475, 478, 832 P.2d 518 (1992). For purposes of the hearing, the State conceded that the ICWA applies.

believe the child is Indian. *Kahlen W.*, 285 Cal. Rptr. at 511.

When the identity of the tribe cannot be determined, the ICWA requires that notice be given to the Secretary of the Interior, "who shall have fifteen days after receipt to provide the requisite notice to the . . . tribe." 25 U.S.C. § 1912(a). The ICWA implementing regulations provide that if the identity or location of the Indian parents, Indian custodians, or the child's tribe cannot be determined, notice of the termination proceeding shall be sent by certified mail with return receipt requested to the appropriate BIA Area Director under the Secretary of the Interior.[3] 25 C.F.R. § 23.11(b). For all proceedings in Washington, the regulations require notice to the Portland BIA office. 25 C.F.R. § 23.11(c)(11). Furthermore, no termination proceeding shall be held until at least 10 days after receipt of the notice by the tribe or by the Secretary. 25 U.S.C. § 1912(a); *In re Dependency of Colnar*, 52 Wn. App. 37, 39, 757 P.2d 534 (1988); *Matter of L.A.M.*, 727 P.2d 1057, 1060 (Alaska 1986).

█ Notice is a key component of the congressional goal to protect and preserve Native American families. It ensures that the tribe will be afforded the opportunity to assert its rights under the act. Without such notice, the rights guaranteed by the ICWA are meaningless. *Kahlen W.*, 285 Cal. Rptr. at 511. Accordingly, the ICWA specifically authorizes a parent to petition a court to invalidate a termination proceeding upon a showing that the notice requirements of the act have not been met. 25 U.S.C. § 1914; *L.A.M.*, 727 P.2d at 1059.

█ Failure to provide the required notice mandates remand unless the tribe has participated in the proceedings or expressly indicated that it has no interest in the proceedings. See *Kahlen W.*, 285 Cal. Rptr. at 513. But technical compliance with the act is not required if there

---

[3]We note that although the ICWA requires that notice be sent by registered mail, 25 U.S.C. § 1912(a), the implementing regulations provide that notice be sent by certified mail. 25 C.F.R. § 23.11(a), (b).

has been substantial compliance with the notice provisions of the ICWA. *See Kahlen W.*, 285 Cal. Rptr. at 511. The statute and the case law, however, have all required actual notice to the tribe of both the proceeding and the right to intervene. See *Kahlen W.*, 285 Cal. Rptr. at 511; *see also Matter of Dependency and Neglect of A.L.*, 442 N.W.2d 233, 236 (S.D. 1989) (although notice not sent by registered mail, tribe had actual notice by certified mail).

1. Cook Inlet Tribe

Here, the father alleges that the Department failed to give proper notice to the Cook Inlet tribe, the Chitina tribe, and the Secretary of the Interior. The father first argues that the notice to the Cook Inlet tribe was not sent by registered mail with return receipt requested. McKee testified that he sent the notice by overnight mail, but was unsure if he sent it certified. The tribe, however, had actual notice. Because of this and because we find no prejudice to either the tribe or the children by the failure to send the notice by registered mail, we hold that the overnight mailing substantially complied with the mailing requirements of the act. *See A.L.*, 442 N.W.2d at 236 (substantial compliance as tribe had actual notice by certified mail).

The father then argues that the Department did not give the Cook Inlet tribe notice 10 days before the hearing. Under the ICWA, no termination of parental rights shall be held until at least 10 days after the tribe receives the notice. 25 U.S.C. § 1912(a); *Colnar,* 52 Wn. App. at 39; *L.A.M.,* 727 P.2d at 1060. Here, McKee mailed the information seven days before the hearing. Although the tribe said it was not interested and would not intervene, we conclude this was not sufficient notice. Ten days may be barely sufficient time for the tribe to ascertain whether the children are members, and if so, whether the tribe wants to intervene. The record does not show whether the tribe's decision was motivated in part by lack of timely notice. To guard against this possibility, we hold that the Cook Inlet tribe was entitled to the full 10 days notice.

Thus, we conclude that, in view of this short timeframe, substantial compliance means strict compliance — the full 10 days.

2. Chitina Tribe

The father then argues that notice should have been sent to the Chitina tribe. No evidence, however, suggests that the children are members of the Chitina tribe. Neither the children nor the mother were on the active tribal enrollment. Thus, the record does not show that the children are the biological children of a tribal member. *See* 25 U.S.C. § 1903(4). Accordingly, notice to the Chitina was not required.

3. Secretary of the Interior/BIA

Finally, the father argues that the notice to the Secretary was insufficient. He first contends that contacting the BIA does not satisfy the notice provision. This argument is without merit. Under the interpretive regulations, notice of the termination proceeding shall be sent to the appropriate BIA Area Director under the Secretary of the Interior. 25 C.F.R. § 23.11(b). For proceedings in Washington, the regulations require that notice be sent to the Portland, Oregon BIA office. 25 C.F.R. § 23.11(c)(11).

■ ■ The father also argues that the notice sent to the BIA was both premature and insufficient. McKee sent the notice to Clemons in October or November 1993, only three months after the department had obtained dependency over M.S.S. M.E.S. had not been born yet, and the Department was not then seeking termination. McKee never heard from Clemons. Although McKee testified that the Alaska BIA office was sent several notices, he did not testify when these additional notices were sent. The Department had the burden of proving that the notices sent complied with the ICWA. *See L.A.M.*, 727 P.2d at 1060-61; *Matter of N.A.H.*, 418 N.W.2d 310, 311 (S.D. 1988). It did not meet this burden. Moreover, the regulations require that notice be sent to the BIA office in Portland. The Department never sent notice to the Portland office but rather sent it to the Alaska office. The Department

did not substantially comply with the notice provisions of the ICWA.

The Cook Inlet tribe's decision not to intervene does not end the search for the children's possible tribal identity. As the father notes, because the Department has not followed the proper notice procedures, it does not know whether the children are members of another, yet unidentified, tribe. His contentions are further strengthened by the mother's mixed heritage; her BIA card indicates that she is 3/8th Eskimo and otherwise 1/8th Indian.

The Department then argues that the case should be remanded for issuance of the proper notice, rather than a reversal of the termination proceedings. In *Colnar*, rather than vacating the termination, we remanded for the trial court to make further findings regarding the child's Indian status under the act. *See Colnar*, 52 Wn. App. at 41. When no tribe intervened after proper notice to the BIA and tribes, we affirmed the original termination order. *Colnar*, 52 Wn. App. at 41.

The Supreme Court of Vermont, citing *Colnar*, has taken a similar position. *In re M.C.P.*, 153 Vt. 275, 571 A.2d 627, 635 (1989). In *M.C.P.*, the trial court concluded that the child did not meet the definition of an Indian child under the ICWA and, therefore, notice was not sent to the child's reported tribe or the tribe of her then adoptive parents. *M.C.P.*, 571 A.2d at 632. On appeal, the court held that the failure to give notice did not warrant reversal of the termination where the sole deficiency was the notice and there had been no determination that the ICWA applies. *M.C.P.*, 571 A.2d at 635. The *M.C.P.* court, therefore, remanded the case for notice according to the act. The court concluded, "If the tribe does not seek to intervene, or after intervention the trial court still concludes that the ICWA does not apply, the original [termination] orders will stand." *M.C.P.*, 571 A.2d at 635. Finally, the *Kahlen W.* court also remanded a termination action and gave the tribe an opportunity to intervene, rather than invalidate the entire proceeding. *Kahlen W.*, 285 Cal. Rptr. at 514.

138

Here, we remand the case for the proper notice to both the Portland office of the BIA and Cook Inlet tribe. If the BIA is unable to identify another potentially interested tribe, or if that tribe, as well as the Cook Inlet tribe, declines to intervene, the original termination order will stand. *See Colnar*, 52 Wn. App. at 41; *M.C.P.*, 571 A.2d at 635; *Kahlen W.*, 285 Cal. Rptr. at 514. If the BIA identifies another tribe which then seeks to intervene, or if the Cook Inlet tribe seeks to intervene, the termination hearing will be invalidated. Accordingly, we remand the case for proper notice under the act.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and SEINFELD, J., concur.

Review denied at 133 Wn.2d 1008 (1997).