IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 79227-0-I |
| A.R.J.H. (DOB: 6/20/2017), | ) ) | DIVISION ONE |
| Minor child, | ) ) | |
| | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) | |
| | ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | FILED: July 29, 2019 |
| ALONSO ENRIQUE HERNANDEZ, | ) ) | |
| Appellant. | ) ) | |

SMITH, J. — Alonso Enrique Hernandez appeals from the order terminating his parental rights to his daughter A.R.J.H. He argues the trial court erred in finding that the Department of Social and Health Services (Department)[1] had no reason to know A.R.J.H. was an Indian child and that the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and the Washington Indian Child Welfare Act (WICWA), chapter 13.38 RCW, did not apply to the proceeding. He also argues the Department failed to prove there was little

---

[1] As of July 1, 2018, the new Department of Children, Youth, and Families has assumed the functions and duties of the Department of Social and Health Services related to child welfare services. See RCW 43.216.906.

likelihood his parental deficiencies could be remedied in the near future. For the reasons that follow, we affirm.

## FACTS

Hernandez is the biological father of A.R.J.H., born June 20, 2017. Melissa Marie Nichuals is A.R.J.H.'s biological mother. Nichuals did not appear for trial, and her parental rights were terminated in October 2018. She is not a party to this appeal.

On the day A.R.J.H. was born, Hernandez was incarcerated for possessing a controlled substance. He was released two weeks later but experienced several additional short periods of incarceration throughout the duration of the dependency.

Both parents struggled with long-standing substance use disorders. Hernandez reported that he used Percocet on a daily basis and that he also used methamphetamines, marijuana, and alcohol. Nichuals reported daily use of heroin and methamphetamines. A.R.J.H. was born drug affected and remained in the hospital for a month after her birth while experiencing symptoms of withdrawal. At the time of trial, A.R.J.H. still had special needs and required occupational therapy and physical therapy.

On July 20, 2017, the Department filed a dependency petition for A.R.J.H. and removed her from the custody of her parents. The petition alleged that A.R.J.H. "was removed due to mental health issues, chronic substance abuse issues, lack of parenting skills, and lack of safe and stable housing." A.R.J.H. remains in foster care and has not lived with either parent.

During the investigation leading up to the dependency, Nichuals reported having possible Athabascan ancestry from her father. The Department learned that A.R.J.H.'s maternal grandfather was an enrolled member of Athabascan/Cook Inlet.[2] In June 2017, the Department sent inquiries to the Bureau of Indian Affairs (BIA) and each relevant individual tribal entity, requesting assistance in determining whether A.R.J.H. is an "Indian child" subject to the provisions of ICWA and the Washington Indian Child Welfare Act (WICWA). In its dependency petition, the Department indicated that it was not yet able to determine whether A.R.J.H. was an "Indian child" because several tribal entities had not responded to its inquiries. The Department continued to conduct inquiries to those tribal entitles that had not responded.

After inquiring of each participant present at the shelter care hearing on July 26, 2017, the court found that "[n]o parent, party, child, tribe, or other participant has given reason to know that [A.R.J.H.] is a member or eligible for membership of any federally-recognized Tribe" and that ICWA and WICWA did not apply to the proceedings.[3] The court ordered a drug and alcohol evaluation, random urinalysis testing, and parenting classes as remedial services for

---

[2] The Department filed a motion pursuant to RAP 9.11 to supplement the record with its inquiries to the Bureau of Indian Affairs (BIA) and other tribal entities, and the tribe's response to those inquiries. A commissioner of this court referred the motion to the panel determining this case. Because this supplemental documentation will be helpful in reviewing key issues raised by Hernandez in his briefing, the motion is granted.

[3] Both Hernandez and Nichuals were present and represented by counsel at the hearing.

Hernandez. In August 2017, Hernandez completed the drug and alcohol assessment but did not engage in recommended outpatient treatment.

On September 12, 2017, the court entered an agreed order of dependency as to both parents. Regarding Hernandez, the court again ordered as services a drug and alcohol evaluation, random urinalysis testing, and parenting classes as remedial services. At the first dependency review hearing on December 14, 2017, the court also ordered Hernandez to participate in a mental health assessment and Narcotics Anonymous/Alcoholics Anonymous (NA/AA) meetings.

Throughout the dependency, Hernandez sporadically engaged in court-ordered services. He attended a few NA/AA meetings and provided some urinalysis tests. He also attended some parenting classes but was removed due to inconsistent attendance. He did not obtain a mental health evaluation or individual counseling.

Hernandez did not consistently attend visits with A.R.J.H. Although he had the opportunity to visit A.R.J.H. two times per week, he typically missed two or three visits per month. Sometimes he missed visits because he was incarcerated or unable to obtain transportation. On one occasion, Hernandez drove Nichuals to a visit but stayed in the car during the visit. When Hernandez did visit, he often arrived late and left early. Department social worker Francesca McManus also observed that Hernandez sometimes appeared to be under the influence during visits.

4

On March 23, 2018, the Department filed a petition to terminate Hernandez's and Nichuals' parental rights to A.R.J.H. At that point, every contacted tribal entity except the native village of Eklutna had responded that A.R.J.H. was not an Indian child. In February 2018 and September 2018, the Department again sent letters, inquiries, and ancestry charts to the native village of Eklutna attempting to determine whether A.R.J.H. was an Indian child. The Department never received a response.

The Department referred Hernandez for another drug and alcohol assessment. That assessment recommended inpatient treatment. On September 18, 2018, Hernandez entered inpatient treatment for substance use disorder.

A one-day termination trial was held on October 1, 2018. At that time, A.R.J.H. was 15 months old and had never lived with either parent. Following the testimony of four witnesses and the admission of 36 exhibits, the court entered findings of fact and conclusions of law and entered an order terminating Hernandez's parental rights. Hernandez appeals.

ANALYSIS

Parents have fundamental liberty and privacy interests in the care and custody of their children. In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995) (citing In re Dependency of J.B.S., 123 Wn.2d 1, 12, 863 P.2d 1344 (1993)); Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). But this right is not absolute. See In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980); Santosky, 455 U.S. at 766-67. "The

paramount consideration in a termination proceeding is the child's welfare." In re Dependency of J.A.F., 168 Wn. App. 653, 668, 278 P.3d 673 (2012). Where a child's rights conflict with the parent's legal rights, the child's rights prevail. RCW 13.34.020.

To prevail in a petition to terminate parental rights, the State must prove the following six statutory elements by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
> . . . .
> (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). Clear, cogent, and convincing evidence exists when the evidence shows the ultimate fact at issue is highly probable. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). If the court finds the State has met its burden under RCW 13.34.180(1), the court may terminate parental rights if it finds by a preponderance of the evidence that termination is in the best interests of the child. RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

We review an order terminating parental rights to determine whether substantial evidence supports the court's findings by clear, cogent, and convincing evidence. In re Parental Rights to K.M.M., 186 Wn.2d 466, 477, 379 P.3d 75 (2016). We defer to the trial court on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011). Such deference is particularly important in proceedings affecting the parent and child relationship because of "the trial judge's advantage in having the witnesses before him or her." In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). Unchallenged findings of fact are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

Applicability of ICWA and WICWA

For the first time on appeal, Hernandez argues that the trial court erred in finding that ICWA and WICWA did not apply to the termination proceeding. Applicability of IWCA or WICWA is a question of law reviewed de novo. In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016).

Congress enacted ICWA in 1978 to "'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.'" In re Dependency of T.L.G., 126 Wn. App. 181, 186-87, 108 P.3d 156 (2005) (quoting 25 U.S.C. § 1902). In 2011, Washington enacted the Washington State Indian Child Welfare Act (WICWA), its own version of ICWA. We apply the provisions of ICWA and WICWA coextensively unless one provides more

7

protection than the other, in which case we apply the more protective act. In re Welfare of A.L.C., ___ Wn. App. ___, 439 P.3d 694, 699 (2019).

ICWA grants tribes significant rights, including the right to intervene in state court proceedings involving termination of parental rights of an "Indian child." 25 U.S.C. § 1911(c); T.L.G., 126 Wn. App. at 187. Having Native American ancestry is not enough to establish that a child is an "Indian child" for the purposes of ICWA and WICWA. Rather, ICWA specifically defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).[4]

Where the court has "reason to know" that an "Indian child" is involved in a termination proceeding, ICWA requires that the Department notify the tribe of the pending proceedings and the tribe's right to intervene. 25 U.S.C. § 1912(a); see also RCW 13.38.070(1). "Without such notice, the rights guaranteed by the ICWA are meaningless." In re Welfare of M.S.S., 86 Wn. App. 127, 134, 936 P.2d 36 (1997). Failure to provide proper notice may be grounds for invalidating the child custody determination. T.L.G., 126 Wn. App. at 192-93; 25 U.S.C. § 1914.

---

[4] WICWA's definition of "Indian child" is nearly identical to ICWA's definition. See RCW 13.38.040(7) ("'Indian child' means an unmarried and unemancipated Indian person who is under eighteen years of age and is either: (a) A member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

In June 2016, the BIA promulgated binding regulations establishing the following factors to be considered in determining whether there is "reason to know" a child is an "Indian child" for purposes of ICWA:

> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
> (5) The court is informed that the child is or has been a ward of a Tribal court; or
> (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c).

If there is "reason to know" the child is an "Indian child" but the court does not have sufficient evidence to make the determination, the court must confirm that the agency used "due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership)." 25 C.F.R. § 23.107(b)(1). Similarly, WICWA requires the Department to make a "good faith effort" to investigate whether the child is an "Indian child." RCW 13.38.050. The court must treat the child as an "Indian child" unless and until it determines on the record that the child is not an "Indian child." 25 C.F.R. § 23.107(b)(2).

Hernandez argues that the Department had "reason to know" A.R.J.H. is an "Indian child" because her maternal grandfather is an enrolled tribal member. He contends the court had no information from which to conclude that A.R.J.H. is not an "Indian child" because the Department never received a reply from the native village of Eklutna and A.R.J.H. might have been a member of that tribal entity. We disagree.

The record shows that the Department used due diligence and made good faith efforts to verify whether A.R.J.H. was an "Indian child." After the Department learned that A.R.J.H.'s grandfather was an enrolled member of Athabascan/Cook Inlet, it proactively sent inquiries to the BIA and relevant tribal entities seeking to determine whether any of them considered A.R.J.H. or her mother to be members or eligible for membership. The Department received responses from every tribal entity except the native village of Eklutna. Prior to the termination trial, the Department made two additional attempts to contact that tribal entity, but it never responded. Thus, despite the Department's diligent efforts, no tribal entities provided the Department or the court with "reason to know" A.R.J.H. or her mother were members or eligible for membership pursuant to 25 C.F.R. § 23.107. The record supports the trial court's finding that A.R.J.H. was not an "Indian child" for purposes of ICWA and WICWA.

Hernandez asserts that T.L.G. requires reversal of the termination order. That case is distinguishable. In T.L.G., the mother informed the Department that she had been told her biological father was full-blooded Cherokee. T.L.G., 126 Wn. App. at 189. However, she testified that she was neither enrolled in a tribe

10

nor a member of a tribe. T.L.G., 126 Wn. App. at 190. Although neither the Department nor the court provided notice to the tribe or the BIA, the trial court concluded that ICWA did not apply because the mother was not an enrolled tribal member and had done nothing to assist the Department in accessing her sealed adoption records. T.L.G., 126 Wn. App. at 190. On appeal, this court concluded that the court erred in failing to ensure that the tribes and the BIA received notice of the termination proceedings:

> But tribal enrollment is not the only means of establishing Indian heritage. Nor is [the mother's] belief that she is not a tribal member dispositive. Tribes control the rules of their membership, and whether [the mother] is a member is a question only the tribe can definitively answer.

T.L.G., 126 Wn. App. at 191 (footnote omitted).

Here, unlike in T.L.G., the Department contacted all potentially relevant tribes based on A.R.J.H.'s maternal grandfather's reported ancestry. The concern expressed by the court in T.L.G. is therefore not present here. Furthermore, T.L.G. was decided prior to promulgation of the 2016 BIA regulations regarding "reason to know," which are applicable to this case.[5] Substantial evidence supports the trial court's finding that ICWA and WICWA did not apply.

---

[5] In 1979, the BIA issued nonbinding guidelines to assist state courts in the implementation of ICWA. See 44 Fed. Reg. 67,584 (Nov. 26, 1979). The 2016 binding regulations replaced those guidelines.

Little Likelihood that Conditions Will Be Remedied in the Near Future

The Department must prove "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). The focus is on whether the identified parental deficiencies have been corrected. In re Dependency of T.R., 108 Wn. App. 149, 165, 29 P.3d 1275 (2001). Even where evidence shows that a parent may eventually be capable of correcting deficiencies, termination is appropriate if those deficiencies will not be corrected within the foreseeable future. In re Welfare of A.G., 155 Wn. App. 578, 590, 229 P.3d 935 (2010). What constitutes "near future" necessarily depends on the specific circumstances of each case, including the child's age and placement circumstances. In re Welfare of C.B., 134 Wn. App. 942, 954, 143 P.3d 846 (2006). A matter of months may be outside the foreseeable future for a young child. In re Welfare of M.R.H., 145 Wn. App. 10, 28, 188 P.3d 510 (2008). "When it is eventually possible but not imminent for a parent to be reunited with a child, the child's present need for stability and permanence is more important and can justify termination." C.B., 134 Wn. App. at 958-59.

Hernandez argues that substantial evidence did not support the court's finding that there was little likelihood conditions will be remedied so that A.R.J.H. can be returned to him in the near future. Specifically, he contends that he is on the road to recovery and will be ready to parent A.R.J.H. within six months. The trial court's findings to the contrary are supported by substantial evidence.

At the time of trial, A.R.J.H. was 15 months old. The court found that Hernandez "is on the right track by attending treatment, but he is at an early stage of recovery and has a long way to go to address these issues." The court found that it would be 12 or more months to reunification and that this time frame was too long for A.R.J.H., who has been in foster care for her entire life and is bonding with her caregivers. The court further found that waiting this long would be detrimental to A.R.J.H. and that her foreseeable future is now.

McManus testified that during the dependency, Hernandez was in and out of jail, lacked a reliable place to live, and spent the majority of his time attempting to locate and buy drugs. She testified that even if Hernandez engaged in all recommended services, it would be at least a year until A.R.J.H. could be returned to his care full-time. She further testified that it would be inappropriate to move A.R.J.H. from a family that she has bonded with and considers her own. Department social worker Bri Gilbert also testified that if Hernandez engaged in all services and showed progress and compliance, it would be an "absolute minimum" of six months to a year until A.R.J.H. could be returned to his care. And A.R.J.H.'s guardian ad litem, Julie Kerr, testified that she did not anticipate Hernandez would be able to parent A.R.J.H. for six to nine months. Kerr believed that A.R.J.H. could not wait that long and that termination of parental rights was in her best interest.

Hernandez asserts that the facts of his case are analogous to In re Welfare of C.B., 134 Wn. App. 942, 143 P.3d 846 (2006). In C.B., the Department removed the children from the mother due to her lengthy struggle

13

with drug and alcohol addiction. 134 Wn. App. at 948. Although her recovery was initially slow, she eventually began engaging in services and made "remarkable" progress. C.B., 134 Wn. App. at 948. By the time of trial, she had completed a recommended parenting classes and nearly completed a substance abuse treatment program, and there was undisputed evidence that she was doing well in her recovery. C.B., 134 Wn. App. at 947-48. The Department argued this was insufficient progress to demonstrate that the mother would likely remedy conditions in the near future, which was six months to a year. C.B., 134 Wn. App. at 946, 953. The appellate court held that "where a parent produces evidence that she has been improving over a four-month period after the State files a termination petition but before the termination hearing, the State may not rely solely on past performance to prove that it is highly probable that there is little likelihood that the parent will be reunited with her children in the near future." C.B., 134 Wn. App. at 953.

Here, unlike the mother in C.B., Hernandez did not present concrete evidence of recent, steady improvement. He failed to attend outpatient treatment during the dependency and entered inpatient treatment for his long-standing substance abuse issues only two weeks prior to the termination trial. He had never completed a parenting class or participated in a mental health assessment or individual counseling. Nor had he secured safe and stable housing for A.R.J.H. Although he testified that his substance abuse issues arose just a few years prior to trial, his criminal history indicated use and abuse of substances since at least 2009. And even though Hernandez reported his clean date as July

14

14, 2018, he subsequently admitted that he had used marijuana and alcohol in mid-September 2018, just prior to entering inpatient treatment. Moreover, the following unchallenged findings are verities on appeal:

2.65 The father himself testified that it would be six to twelve months before he could parent.

2.68 The father could remedy his parental deficiencies within twelve months. As to the likelihood that he will do so, if past experience is an indication of future action, then the likelihood is troublesome.

Substantial evidence supports the trial court's finding that there is little likelihood that conditions will be remedied so that A.R.J.H. could be returned to Hernandez in the near future.

Affirmed.

WE CONCUR: