J-A06045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: G.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1968 EDA 2024 |

Appeal from the Order Entered July 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No:  CP-51-DP-0000522-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: J.U.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1969 EDA 2024 |

Appeal from the Decree Entered July 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No:  CP-51-AP-0000021-2024

BEFORE:   PANELLA, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 27, 2025**

G.N. ("Mother") appeals from the July 9, 2024 decree involuntarily

terminating her parental rights to her daughter, J.U.I. a/k/a J.I. ("Child"), born

_____

[*] Former Justice specially assigned to the Superior Court.

in May 2007.[1]  Mother further appeals from the July 9, 2024 order changing Child's permanency goal to adoption.  After review, we vacate and remand.

We gather the following relevant factual and procedural history from the certified record.  The Philadelphia Department of Human Services ("DHS") obtained emergency protective custody of Child in March 2019, due to a report alleging that Mother was experiencing "a mental health crisis."  Notes of Testimony ("N.T."), 7/9/24, at 8-9.  At the time of this report, Mother was residing in a shelter with Child and two of her siblings[2] after relocating to Philadelphia from Kansas City, Missouri.  Child was placed in foster care, where she remained at the time of the subject proceedings, over five years later. *See id.*

The court ultimately adjudicated Child dependent on June 21, 2019, and established an initial permanency goal of reunification.[3]  The court referred Mother to the Achieving Reunification Center ("ARC") for parenting and housing services and referred Mother and Child to Behavioral Health Services ("BHS") for mental health services.  *See* Order of Adjudication and Disposition, 6/21/19, at 2.  In furtherance of reunification, DHS and/or its

---

[1]  By separate decree entered the same date, the court additionally involuntarily terminated the parental rights of Child's father, J.L.I. ("Father"). Father did not appeal or participate in the instant appeals.

[2] Child's siblings are not subjects of these proceedings or appeal.

[3] The court later added a concurrent permanency goal of adoption on August 26, 2022.  *See* Permanency Review Order, 8/26/22.

partner, the Community Umbrella Agency ("CUA"), instituted a single case plan requiring Mother to, *inter alia*, "participate in mental health treatment and medication management, and provide documentation for both[; and] to provide proof of native tribe affiliation. . . ." ***Id.*** at 10-11. This was consistent with numerous directives of the court to Mother throughout the ensuing dependency proceedings. ***See*** DHS Exhibit 1.

Significantly, at the time of adjudication, the court indicated, "It has not been determined whether [C]hild is Indian as defined in 25 U.S.C. [§] 1903(4)." Order of Adjudication and Disposition, 6/21/19. At a review hearing in August 2021, the court required Mother "to provide information of her tribe affiliation." Permanency Review Order, 8/20/2021. Then, in November 2021, the court directed DHS "to contact the two Native-American tribes [] Mother mentioned" to confirm her affiliation. However, the court did not identify either Native American tribe, and the certified record does not include originals or copies of any notice provided to any Native American tribe. Permanency Review Order, 11/5/21; Permanency Review Order, 8/20/21.

At a review hearing in January 2022, the court admitted a letter dated November 30, 2021, from the Eastern Band of Cherokee Indians ("EBCI") notifying DHS that, based upon the information provided, Child is "neither registered nor eligible to register as a member" of the tribe and is therefore "not considered an Indian child in relation to the [EBCI]." DHS Exhibit 1, 1/21/22. In April 2023, the court again ordered Mother to provide proof of

- 3 -

her tribal affiliation, without further specificity. *See* Permanency Review Order, 4/14/23.

Following a successive decline in Mother's compliance with her permanency plan, on January 18, 2024, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), as well as a petition to change Child's permanency goal from reunification to adoption.

The trial conducted a combined evidentiary hearing on DHS's petitions on July 9, 2024. Mother was present and represented by counsel.[4] Child, then seventeen years old, was represented by the Support Center for Child Advocacy ("SCCA").[5] DHS presented the testimony of CUA case manager, Kiara Greene. Additionally, Mother testified on her own behalf.

_____

[4] Father, who resides in Colorado and failed to participate throughout the dependency proceedings, was not present. He was, however, represented by counsel. *See* N.T., 7/9/24, at 3-4, 19-21. It was revealed that, until the time of the subject hearing, Father's first name had been misspelled and/or incorrect. Notwithstanding, Father did not challenge service of process of either the dependency proceedings or the involuntary termination proceeding. *See id.* at 4-7.

[5] Our Supreme Court has mandated that appellate courts *sua sponte* "verify that the orphans' court indicated that the attorney [in a dual role of guardian *ad litem* (GAL) and legal counsel] could represent the child's best and legal interests without conflict." *In re Adoption of K.M.G.*, 663 Pa. 53, 82-83, 240 A.3d 1218, 1236 (2020); *see also* 23 Pa.C.S.A. § 2313(a). Counsel representing a child's legal interests must advocate for the child's preferred outcome even if counsel does not agree with it, whereas the GAL representing a child's best interests must express "what he or she believes is best for child's care, protection, safety, and wholesome physical and mental development,
*(Footnote Continued Next Page)*

By decree dated and entered on July 9, 2024, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). By separate order also entered on July 9, 2024, the court changed Child's permanency goal from reunification to adoption.

Mother timely filed separate notices of appeal from the decree and order, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on November 7, 2024.[6] The trial court filed a Rule 1925(a) opinion on

regardless of whether the child agrees." ***In re T.S.***, 648 Pa. 236, 240, 192 A.3d 1080, 1082 n.2 (2017).

Our review of the record in this case reveals that the trial court appointed the SCCA on March 28, 2019 to represent Child as GAL/counsel in the dependency matter. While the court did not formally appoint GAL/counsel in the termination matter, we do not find this omission fatal. ***See T.S.***, 648 Pa. at 253, 192 A.3d at 1090 n.19 (recognizing it would "be a better practice for the court to place an order on the record formalizing the GAL's role for termination purposes" but declining "to elevate form over substance.").

In this case, the SCCA represented Child during the subject proceedings. In addition, the trial court found that Child's dual interests did not conflict in an order continuing the proceeding to a later date. Thus, the court fulfilled the mandate of ***K.M.G.*** and Section 2313(a). ***See*** Order, 4/12/24; ***see also*** N.T., 7/9/24, at 54-55.

[6] Mother filed these notices of appeal *pro se* and in contravention of the rules as she was represented by court-appointed counsel, Cowanis Lee Duckett, Jr., Esquire, at the time of their filing. ***See Commonwealth v. Ellis,*** 534 Pa. 176, 180-81, 626 A.2d 1137, 1139 (1993) (emphasizing that hybrid representation is forbidden on appeal). Thereafter, on October 8, 2024, the trial court appointed Maureen F. Pie, Esquire, to represent Mother in the instant appeal. This Court ultimately re-established a briefing schedule and, subsequent to being granted several extensions, Attorney Pie filed a brief on behalf of Mother, which she then amended.

- 5 -

August 22, 2024, referencing its reasoning placed on the record in open court at the conclusion of the subject hearing. *See* N.T., 7/9/24, at 51-55.

On appeal, Mother raises the following issues for our review:

1. Does [the] Indian Child Welfare Act, 25 U.S.C. [§ 1901, *et seq*., (hereinafter] "ICWA") apply to this child and family?

2. Was the trial court's decision to involuntarily terminate [Mother]'s parental rights to [Child] supported by sufficient evidence of the relevant procedures and factors required under [the] ICWA[,] 25 U.S.C. [§§ 1912(a), (d) and (f), and the Adoption Act, 23 Pa.C.S.A. § 2511(a)] and (b)?

3. Was the trial court's decision to change Child's permanency goal from reunification . . . to adoption supported by compliance with [the] ICWA, and by sufficient evidence, considering all the relevant procedures and factors required by the Juvenile Act, 42 Pa.C.S.[A. §§ 6351(e), (f) and (f.1) and § 6336.1]; and [the] ICWA, 25 U.S.C. [§§ 1912(a), (d) and (e),] that such disposition was in [Child]'s best interests?

Mother's Amended Brief at 12 (suggested answers omitted).[7, 8]

_____

[7] We reorder Mother's issues for ease of disposition.

[8] We note with disapproval a procedural deficiency in Mother's brief. Specifically, organizationally, although Mother offers headings and points of separation, these do not mirror the specific distinct issues raised by Mother in her statement of questions involved or, as in one instance, the issue raised in the heading. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). However, as we are able to discern the general issues raised and related arguments, and we perceive no prejudice, we proceed with the merits of Mother's appeal. *See* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the
*(Footnote Continued Next Page)*

Instantly, we conclude that Mother's first issue concerning the notice provisions of the ICWA is dispositive. Because there is a dearth of applicable Pennsylvania caselaw on this subject, we turn to our sister jurisdictions for persuasive guidance.[9] *See Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) ("The decisions of other states are persuasive, but not binding, authority.").

_____

defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

[9] Our brethren in Texas have provided the following apt and succinct summary of the history and legislative context of the ICWA:

> Congress enacted the ICWA in 1979. The federal legislation was passed in response to the rising concern in the mid-1970s over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. The ICWA provides a variety of procedural and substantive protections in child custody proceedings involving Indian children. It sets out minimum requirements with which a state court must comply before terminating parental rights in a case involving an Indian child. No termination of parental rights may be ordered in such a proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of a qualified expert witness, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

*In the Interest of A.M.*, 2022 Tex. App. LEXIS 842, *4 (February 3, 2022) (internal citations and quotation marks omitted).

It is well-established that issues involving the application and interpretation of the ICWA are questions of law that are reviewed *de novo*. See **A.M.**, ***supra*** at * 6; ***In re Morris***, 815 N.W.2d 62, 69 (Mich. 2012).

The relevant provision of the ICWA provides, in pertinent part, as follows.

**§ 1912. Pending court proceedings**

**(a) Notice; time for commencement of proceedings; additional time for preparation**

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, **the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner**, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

25 U.S.C. § 1912(a) (emphasis added).[10]

_____

[10] Notices must include:

(1) The child's name, birthdate, and birthplace;

*(Footnote Continued Next Page)*

The ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4). Further, "Secretary" is defined as "the Secretary of the Interior." 25 U.S.C. § 1903(11).[11]

The notice requirements under the ICWA cannot be waived and, once triggered, demand strict compliance. *In the Interest of D.M.C.*, 2016 Tex. App. LEXIS 11073, *3-4 (October 12, 2016); *see also Morris*, *supra* at 76. "Substantial compliance with these notice provisions will not suffice." *A.M.*, 2022 Tex. App. LEXIS 842 at *5.

_____

> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthplaces, and Tribal enrollment numbers if known;
>
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents; and
>
> . . .
>
> (5) A copy of the petition, complaint, or other document by which the child-custody proceeding was initiated. . . .

25 C.F.R. § 23.111.

[11] "Under the interpretative regulations, notice of the termination proceeding shall be sent to the appropriate [Bureau of Indian Affairs ("BIA")] Area Director under the Secretary of the Interior." *In re M.S.S.*, 936 P.2d 36, 41 (Wash. Ct. App. 1997) (citing 25 C.F.R. § 23.11(b)).

Further, a violation of the notice provision "may be cause for invalidation" of the underlying proceedings. *In the Interest of J.W.*, 2020 Tex. App. LEXIS 5032, *5 (July 8, 2020) (citation omitted); *see also* 25 U.S.C. § 1914 (providing, "[A]ny parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of [S]ections 1911, 1912, and 1913 of this title."). As recognized in *Morris*,

> Pursuant to [Section 1914]—and with no apparent time limitation on when the collateral action may be brought—the Indian child, a parent, an Indian custodian of the child, or the child's tribe may petition a court to invalidate foster care placements and terminations of parental rights if the state court violated *any* provision included in [Section 1912]. . . . [Thus,] such an action to invalidate the proceedings could be brought even after the children had established permanency with a new family.

815 N.W.2d at 71 (emphasis in original).

Instantly, Mother argues:

> Following an exhaustive review of the record, . . . it appears that DHS did not complete the notification process required by ICWA. That process includes notice to the Secretary of the Interior when DHS cannot locate the specific tribe(s) in question. 25 U.S.C. §1912(a). And although the [trial] court made occasional orders to DHS/CUA and Mother for tribal information, it does not appear that any of the assigned judges made any findings with respect to those orders, or any provisions of ICWA throughout the case.

Mother's Amended Brief at 27-28.

Specifically, Mother asserts that the juvenile court directed her to reveal Child's tribal ancestry and for DHS to notify the tribes in accordance with

- 10 -

Section 1912(a). *See id.* at 28-29; *see also* Permanency Review Order, 11/5/21. Mother does not dispute that DHS provided notice to the EBCI due to the letter received by that tribe stating that Child is not a member. *See* Mother's Brief at 29. However, Mother asserts that, throughout the dependency case, the agency misspelled Father's first name, which may have impacted any search conducted by the EBCI in the chance that he has ancestry with that tribe. *See id.* at 29-30; *see also* N.T., 7/9/24, at 5-7. Mother further asserts that DHS failed to contact two additional Cherokee tribes in Oklahoma, a state which borders Missouri, where Mother and Child previously resided. *See* Mother's Brief at 29-30. As such, Mother argues that the decree and order should be vacated, and the case remanded for compliance with the notice requirements of the ICWA. *See id.* at 30, 41.

In its appellee brief, DHS acknowledges that it failed to notify the Secretary of the Interior of the underlying dependency proceedings as well as the involuntary termination petition. *See* DHS's Brief at 11. Given the conditional nature of the statute's directive to notify the Secretary, we infer that DHS was not able to determine the identity or location of the relevant Native American tribes. DHS requests that we remand the case for it to provide the required notification to the Secretary pursuant to Section 1912(a). *See id.*

In addition, DHS requests that we "conditionally affirm" the termination decree and goal change order "provided that proper notification" occurs and

Child is found not to be a member of any tribe."[12]  *See id.* (citing *In re R.E.K.F.*, 698 N.W.2d 147, 150 (Iowa 2005) (conditionally affirming termination of parental rights and remanding for compliance with the notice requirements of the ICWA, as enacted in Iowa state law, where there was no evidence other than the parent's claim that child was an "Indian child" under the ICWA)).  If Child is not a member of a Native American tribe, then DHS contends that, on the merits, the court did not abuse its discretion in terminating Mother's parental rights and changing Child's goal to adoption, and the decree and order should be affirmed.  *See* DHS's Brief at 13-27.

Conversely, Child baldly asserts that the trial court ensured compliance with the notice requirements of the ICWA and properly deferred to the ECBI's determination that Child was not an "Indian child."  *See* Child's Brief at 19-23.  In the alternative, Child requests that this Court remand the case for a hearing to determine whether there was proper notice pursuant to the ICWA.  *Id.*  Child requests that, "if the trial court determines that such notice was perfected, or that lack of notice did not prejudice the proceedings, . . . the trial court reinstate" the termination decree and goal change order.  *Id.* at 23-24 (citing *M.S.S.*, 936 P.2d 36 (remanding for proper notice as the agency failed to substantially comply with the notice provisions of the ICWA)).  In

---

[12] "A conditional affirmance merely states that the lower court ruling is affirmed unless [the] ICWA applies. . . ."  *Morris*, *supra* at 82.

addition, Child states in her responsive brief that she will turn eighteen years old in May of 2025, and that this will render the applicability of the ICWA moot. *See id.* at 24 n.1; *see also* 25 U.S.C. § 1903(4) (providing, in part, that "Indian child" is "any unmarried person who is under age eighteen. . . .").

In **M.S.S.**, *supra*, the child welfare agency sent notice *via* overnight mail to a Native American tribe seven days prior to a termination of parental rights hearing. While the court found that such a mailing "substantially complied with the mailing requirements of the [A]ct," the court found that the tribe was entitled to the full ten days' notice, stating, "in view of this short timeframe, substantial compliance means strict compliance—the full 10 days." *Id.* at 40-41. However, the court found that the agency did not substantially comply with the ICWA by sending the notice to an incorrect address of the BIA. *See id.* at 41. In contrast, in the case *sub judice*, there is no record evidence that DHS complied with the notice provision of the ICWA at all, let alone substantially complied.

In **In the Interest of A.M.**, *supra*, following the child welfare agency filing a termination of parental rights against the child's parents, the parents reported that A.M. was potentially of Shawnee and Cherokee decent. However, the record failed to contain notice to any of the three federally recognized Shawnee tribes. In addition, although the child welfare agency sent notices to the three federally recognized Cherokee tribes, the proof of notification in the record did not reveal the manner of service. *See id.* at *3.

On appeal, following the termination of parental rights, the **A.M.** court held that the requisite notice under ICWA was not satisfied, and the trial court therefore erred in entering a termination order. **See id.** at *6-7. As such, the court remanded the case to the trial court for notice to be provided in accordance with ICWA. **See id.** at *8; **accord People ex rel. South Dakota Dep't of Social Services in Interest of C.H.**, 510 N.W.2d 119, 123 (S.D. 1993) (remanding for proper Section 1912(a) notice where the record failed to show proof of notice *via* registered return receipt mail). Further, on remand, the court directed the trial court to enter a determination on the record with respect to whether A.M. was subject to the ICWA. **See id.**

Similarly, in **In the Interest of J.W.**, **supra**, the court remanded the case to the trial court for proper notice under the ICWA. In that case, notices were provided to the Secretary of the Interior and the Regional Director of the BIA, which ultimately revealed possible tribal affiliation with the Pima tribe. Further, the child welfare agency was referred to the BIA website for designated tribal agents for service. Despite the BIA website listing both the Salt River Pima-Maricopa Indian Community and Gila River Pima-Maricopa Indian Community as potentially relevant tribes, notice was only sent to the Salt River Pima-Maricopa Indian Community. **See id.** at *2-3. As such, the court remanded the case to the trial court for notice to be provided to the Gila River Pima-Maricopa Indian Community and for the court's determination whether J.W. was subject to the ICWA. **See id.** at *4.

Finally, in **In re Morris**, **supra**, the Michigan High Court dealt with the combined cases of **In re Morris** and **In re Gordon**. In **Morris**, despite initial indications of Cherokee heritage by parents and reflected by the trial court in its initial order, the record revealed no attempts by the agency to provide notice. **See id.** at 66, 77 n.21. In **Gordon**, despite an indication of potential Saginaw Chippewa Indian tribe affiliation, the record proof was devoid of proof that the tribe or Secretary was notified of the dependency proceedings. A. **See id.** at 67-69, 77. The Morris Court found that it was therefore "impossible to discern from the record whether notice was actually sent, to whom it was sent, and whether the notices were received by the appropriate recipients." **Id.** at 77-78. Accordingly, the Court held the following:

> [T]rial courts have a duty to ensure that the record includes, at a minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 U.S.C. [§] 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of notice. In addition, it would be helpful – especially for appellate purposes – for the record to include any additional correspondence between the petitioner, the court, and the Indian tribe or other person or entity entitled to notice under 25 U.S.C. [§] 1912(a).

**Id.** at 78. As such, the Morris Court concluded that, despite sufficient indica of Indian heritage, in both cases, the trial court failed to comply with the notice provisions of the ICWA. The Court remanded the case to the trial court for resolution of the ICWA notice issue. **See id.** at 78-79, 82-83. In so doing, the Court entered an ultimate disposition of "conditional reversal," insofar that it

- 15 -

reversed the termination of parental rights "unless the ICWA does not apply.".

*Id.* at 82.

In consideration of the foregoing case law by our sister states, and our thorough review of the certified record in this case, we conclude that we must vacate the involuntary termination decree and goal change order for failure to comply with Section 1912(a). Specifically, by permanency order dated November 5, 2021, the trial court directed DHS to notify two unspecified Native American tribes of the dependency proceedings involving Child. However, the certified record is devoid of proof that DHS provided notice to any tribe or to the Secretary. The record contains the aforementioned responsive letter from the EBCI, stating that Child is not an "Indian child." Nonetheless, as stated above, DHS used an incorrect and/or misspelled first name for Father, which may have impacted the EBCI search of tribal records. *See* N.T., 7/9/24, at 5-7. For these reasons, we conclude that the requisite notice under the ICWA was not provided in this case. *See A.M.*, *supra* at *6; *see also J.W.*, *supra* at *3; *see also Morris*, *supra* at 78.

Accordingly, we vacate the involuntary termination decree and goal change order. Upon remand, DHS shall provide notice of Child's dependency and adoption dockets in accordance with 25 U.S.C. § 1912(a) and 25 C.F.R. § 23.111, to (1) the two tribes identified by Mother; (2) the two Cherokee tribes located in Oklahoma; and (3) the Secretary. Subsequent to the receipt of

notice, the trial court shall place on the record its determination regarding the applicability of the ICWA in this case. If the trial court determines that Child is an "Indian child" pursuant to Section 1903(4), the court shall hold a new involuntary termination proceeding that shall be governed by the ICWA. If the court determines instead that Child is not an "Indian child," the trial court shall re-enter on the respective dockets the termination decree and goal change order. The certified record is to be remitted immediately to the trial court for compliance with the ICWA consistent with this memorandum.

Decree and Order vacated. Case remanded. Jurisdiction relinquished.

Judge Dubow did not participate in the consideration or decision of this matter.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/27/2025

- 17 -