# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of Z.J.G. and M.E.J.G., minor children, | ) ) ) ) | No. 78790-0-I consolidated with No. 78791-8-I |
| WASHINGTON STATE DEPARTMENT OF SOCIAL & HEALTH SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | |
| v. | ) ) ) | PUBLISHED OPINION |
| SCOTT JAMES GREER, | ) ) | FILED: September 3, 2019 |
| Appellant. | ) ) ) | |

VERELLEN, J. — Consistent with the standards of the federal Indian Child Welfare Act of 1978 (ICWA)[1] and the Washington State Indian Child Welfare Act (WICWA),[2] at the commencement of a 72-hour shelter care hearing, the court is obligated to inquire whether the child is or may be an Indian child. But if the Department of Social and Health Services[3] (Department) engages in a good faith investigation into the child's Indian status, the parties elicit the relevant evidence at

---

[1] 25 U.S.C. §§ 1901-19.

[2] Ch. 13.38 RCW.

[3] Now known as the Department of Children, Youth, & Families.

the hearing, and the court considers that evidence before ruling on shelter care, then the court substantially complies with the inquiry requirement.

The application of ICWA and WICWA turns on the definition of an "Indian child." The court has "reason to know" a child is or "may be" an Indian child when the court receives evidence that the child is a tribal member or the child is eligible for tribal membership and a biological parent is a tribal member.[4] If there is a reason to know, ICWA and WICWA require the court to treat the child as an Indian child pending a conclusive membership determination by the tribe.[5] But a parent's assertion of Indian heritage, absent other evidence, is not enough to establish a reason to know a child is an Indian child. Either a child or a parent must have a political relationship to a tribe through membership.

Here, at the time of the shelter care hearing, good faith investigation had not yet revealed evidence a parent or a child was a tribal member. As a result, the court did not err in concluding there was no reason to know the children were Indian children. Of course, the Department was obligated to continue its investigation.

Even if there is reason to know a child is an Indian child, ICWA's and WICWA's heightened requirements of a 10-day notice to the tribe and active efforts to provide services have no application to an imminent harm 72-hour shelter care hearing because it is an emergency proceeding.

---

[4] 25 U.S.C. § 1912(a); RCW 13.38.070(1).
[5] 25 U.S.C. § 1912(a); RCW 13.38.070(1).

Therefore, we affirm.

FACTS

On June 27, 2018, Z.G., age 21 months, and M.G., age 2 months, were placed in law enforcement protective custody by the Kent Police Department due to concerns of neglect and unsanitary living conditions.[6] Officers noted "[n]o food in the home, a fridge that won't open, items in disarray, rats coming in and out of the [recreational vehicle]."[7]

On June 29, 2018, the Department filed dependency petitions for Z.G. and M.G.[8] The dependency petitions recite:

> Based upon the following, the petitioner knows or has reason to know the child is an Indian child as defined in RCW 13.38.040 and 25 U.S.C. § 1903(4), and the Federal and Washington State Indian Child Welfare Acts do apply to this proceeding:
>
> Mother has Tlingit-Haida heritage and is eligible for membership with Klawock Cooperative Association. She is also identified as having Cherokee heritage on her paternal side. Father states he may have native heritage with Confederated Tribes of the Umatilla in Oregon.
>
> The petitioner has made the following preliminary efforts to provide notice of this proceeding to all tribes to which the petitioner knows or has reason to know the child may be a member or eligible for membership if the biological parent is also a member:

---

[6] Clerk's Papers (CP) at 4.

[7] Id.

[8] CP at 1. The record on appeal contains only Z.G.'s dependency petition, shelter care order, and dependency order. But at oral argument, the State represented that the petition and orders pertaining to M.G. are identical regarding his Indian status.

3

Inquiry to tribes has been initiated. Worker has called Central Council Tlingit Haida regarding this family and petition. Further inquiry and notification to tribes ongoing.[9]

The shelter care hearing took place on July 2 and 3, 2018. The father, the mother, and the social worker who signed the dependency petitions testified at the hearing. During direct examination, the State asked the social worker whether the children "qualify" under WICWA.[10] The social worker responded, "To my knowledge, not at this time."[11] The State asked, "And what investigation have you done?" The social worker responded,

> I called the Tlingit and Haida Indian tribes of Alaska, and they gave me information that the maternal grandmother is an enrolled member, but the mother is not enrolled, and the children are not enrolled. And to my knowledge, the father is not enrolled in a federally recognized tribe either.[12]

During cross-examination, father's counsel asked the social worker whether "it's possible that the children are eligible for tribal membership?" The social worker replied, "Yes, it is."[13]

The father testified he had "native heritage with the confederated tribes of the Umatilla in Oregon."[14] The father also indicated that it was his "understanding

---

[9] CP at 2 (emphasis added).

[10] Report of Proceedings (RP) (July 2, 2018) at 11.

[11] Id.

[12] Id. at 11-12.

[13] Id. at 23.

[14] RP (July 3, 2018) at 67.

4

that [Z.G. and M.G.] are eligible for tribal membership."[15] The mother testified she and the children were "eligible for American Indian tribal membership" with the Tlingit and Haida tribes.[16] She also testified that she was not an enrolled member of a federally recognized tribe.[17]

In the written shelter care order, the court determined:

> Based upon the following, there is not a reason to know the child is an Indian child . . . . [M]other and father are not enrolled members in a federally recognized tribe. Maternal grandmother is enrolled member, Department continuing to investigate. Mother believes she's eligible for tribal membership.[18]

The court placed Z.G. and M.G. in licensed foster care.[19]

On July 30, 2018, the court granted the Tlingit-Haida tribe's motion to intervene. On September 18, 2018, the court entered a dependency order as to the father's parental rights.[20] Consistent with the tribe's intervention, the court determined there was "reason to know" Z.G. and M.G. were Indian children and applied ICWA and WICWA.[21]

---

[15] Id.

[16] Id. at 88.

[17] Id.

[18] CP at 10.

[19] CP at 12 ("It is currently contrary to the welfare of the child to remain in or return home. The child is in need of shelter care because there is reasonable cause to believe . . . [t]he release of the child would present a serious threat of substantial harm to the child.").

[20] It appears an amended agreed dependency order was entered on March 27, 2019. This order is not contained in the record on appeal.

[21] CP at 59.

On January 9, 2019, a commissioner of this court granted the father's motion for discretionary review of the shelter care order. Although the father's appeal is technically moot, the commissioner determined the issues were of continuing and substantial public importance.[22]

## ANALYSIS

A law enforcement officer may take a child into custody without a court order if there is probable cause to believe that the child is abused or neglected and if the child might be injured if it was necessary to first obtain a court order.[23] Within 72 hours of removal either by a law enforcement officer or court order, the court must conduct a shelter care hearing.[24] The father's appeal concerns the application of ICWA and WICWA at the 72-hour shelter care hearing.

Congress enacted ICWA in 1978 to address the "'alarmingly high percentage of Indian families [that] are broken up by [ ] removal'" by setting minimum procedural and substantive standards.[25] Shortly after, the Bureau of Indian Affairs (BIA), an agency within the United States Department of the Interior, issued related regulations.[26] The BIA also published guidelines "for State courts to

---

[22] Given the lack of argument concerning mootness, the State appears to concede review of the merits is appropriate.

[23] RCW 26.44.050.

[24] RCW 13.34.065(1)(a).

[25] BUREAU OF INDIAN AFFAIRS, U.S. DEP'T OF INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 5 (Dec. 2016) (BIA GUIDELINES) (quoting 25 U.S.C. § 1901(4)), https://www.indianaffairs.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf [https://perma.cc/3AJ-PBCA].

[26] Id.

use in interpreting many of ICWA's requirements in Indian child custody proceedings."[27]

In 2015, the Department of the Interior engaged in a notice-and-comment process to promulgate formal ICWA requirements after "recognizing the need for [binding] regulations."[28] In 2016, the BIA issued those binding regulations and updated the guidelines "to promote the consistent application of ICWA across the United States."[29]

In 2011, our legislature enacted WICWA with the express intent to clarify "existing laws" and to promote "practices designed to prevent out-of-home placement of Indian children that is inconsistent with the rights of the parents, the health, safety, or welfare of the children, or the interests of their tribe."[30]

ICWA applies "[i]n <u>any involuntary proceeding</u> in a State court, where the court <u>knows or has reason to know that an Indian child is involved</u>."[31] Similarly, WICWA applies to "<u>any involuntary child custody proceeding</u> seeking the foster care placement of . . . a child in which the petitioning party or the court <u>knows, or has reason to know, that the child is or may be an Indian child</u> as defined in this chapter."[32] At various times, the parties appear to suggest there is a tension

---

[27] <u>Id.</u>

[28] <u>Id.</u>

[29] <u>Id.</u> at 6.

[30] RCW 13.38.030.

[31] 25 U.S.C.A. § 1912(a) (emphasis added).

[32] RCW 13.38.070(1) (emphasis added).

between the best interests of the child and the interests of the tribe, but the federal guidelines recognize "ICWA was specifically designed by Congress to protect the best interests of Indian children."[33] The federal guidelines further explain:

> One of the most important ways that ICWA protects the best interests of Indian children is by ensuring that, if possible, children remain with their parents and that, if they are separated, that support for reunification is provided. This is entirely consistent with the "best interests" standard applied in state courts . . . .
>
> . . . Congress found that the unfettered subjective application of the "best interests" standard often failed to consider [t]ribal cultural practices or recognize the long-term advantages to children of remaining with their families and [t]ribes.[34]

The federal guidelines acknowledge the best interests of the child and the interests of the tribe are usually aligned, rather than in conflict. Application of ICWA and WICWA does not sacrifice an Indian child's safety or well-being to satisfy the interests of the tribe. "ICWA and the regulations provide objective standards that are designed to promote the welfare and short- and long-term interests of Indian children" and "provide flexibility for courts to appropriately consider the particular circumstances of the individual children and to protect those children."[35]

I. Threshold Inquiry at Shelter Care Hearing

The father contends the juvenile court failed to conduct an adequate inquiry at the shelter care hearing concerning the applicability of ICWA and WICWA.

---

[33] BIA GUIDELINES, supra, at 89.

[34] Id.

[35] Id.

With regard to the court's duty at the shelter care hearing, RCW 13.34.065(4) of the Juvenile Court Act provides, "The paramount consideration for the court shall be the health, welfare, and safety of the child" and sets minimum inquiries the court must conduct, including "[w]hether the child is or may be an Indian child."[36]

WICWA requires the court to determine the applicability of WICWA "as soon as practicable."[37] Federal regulations require the court to conduct the threshold inquiry "in an emergency or voluntary or involuntary child-custody proceeding."[38] Regardless of whether a shelter care hearing is an involuntary or emergency proceeding, the court must inquire into the child's Indian status and ask each participant "whether the participant knows or has reason to know that the child is an Indian child."[39] This "inquiry is made at the commencement of the proceeding and all responses should be on the record."[40]

Here, at the shelter care hearing, the State asked the social worker whether the children "qualified" under WICWA. The social worker summarized his telephone call with the Tlingit and Haida tribes, who confirmed only the maternal grandmother is an enrolled member. The social worker's investigation did not

---

[36] RCW 13.34.065(4)(h).

[37] RCW 13.38.070(2)

[38] 25 C.F.R. § 23.107(a).

[39] Id.

[40] Id.

reveal either of the parents or children were members of a tribe. The social worker acknowledged it is possible the children are eligible for tribal membership.

The father testified he had "native heritage with the confederated tribes of the Umatilla in Oregon."[41] The father also indicated that it was his "understanding that [Z.G. and M.G.] are eligible for tribal membership."[42]

The mother testified she and the children were "eligible for American Indian tribal membership" with the Tlingit and Haida Tribes.[43] She also testified that she was not an enrolled member of a federally recognized tribe.[44] In the written shelter care order, the court found, "[T]there is not a reason to know the child is an Indian child."[45]

The father argues the court did not comply with 25 C.F.R. § 23.107(a) because it did not conduct the threshold reason-to-know inquiry itself. The State argues that although the court did not conduct the inquiry, the hearing substantially complied with the federal regulation because the parties elicited the relevant information concerning Z.G.'s and M.G.'s Indian status.

The father also contends the court did not comply with the federal regulation because it did not conduct the inquiry at the commencement of the

---

[41] RP (July 3, 2018) at 67.
[42] Id.
[43] Id. at 88.
[44] Id. at 90.
[45] CP at 10.

10

shelter care hearing.[46] In response, the State argues the hearing substantially complied with the federal regulation because the court addressed Z.G.'s and M.G.'s Indian status before ruling on shelter care.

Our courts have applied the doctrine of substantial compliance to ICWA and WICWA requirements. In In re the Welfare of M.S.S., Division Two of this court applied the doctrine of substantial compliance to ICWA's notice requirement.[47] In M.S.S., the father appealed the court's termination of his parental rights, arguing the court lacked jurisdiction because the Department failed to strictly comply with the notice provisions of ICWA.

In M.S.S., the termination hearing occurred on June 30, 1995. Before the hearing, on June 22, 1995, the father's attorney informed the social worker that the Cook Inlet Indian tribe had identified the children's maternal grandmother as an enrolled member.[48] The next day, the social worker sent an inquiry to the Cook Inlet tribe by overnight mail.[49] On June 26, 1995, the Cook Inlet tribe informed the social worker that the tribe did not want to intervene or otherwise be involved in

---

[46] See also RCW 13.34.065(4)(h) ("At the shelter care hearing . . . the court shall inquire into . . . [w]hether the child is or may be an Indian child as defined in RCW 13.38.040, whether the provisions of the federal Indian child welfare act or chapter 13.38 RCW apply, and whether there is compliance with the federal Indian child welfare act and chapter 13.38 RCW, including notice to the child's tribe.").

[47] 86 Wn. App. 127, 936 P.2d 36 (1997). M.S.S. was decided in 1997, before our legislature enacted WICWA.

[48] Id. at 131.

[49] Id.

11

the proceedings.[50] The social worker did not comply with the ICWA notice requirements because he did not send the inquiry by registered mail with return receipt requested, and the tribe did not receive notice at least 10 days before the termination hearing.

In analyzing whether the notice substantially complied with ICWA, Division Two focused on the purpose behind the notice requirement:

> Notice is a key component of the congressional goal to protect and preserve Native American families. It ensures that the tribe will be afforded the opportunity to assert its rights under the act. Without such notice, the rights guaranteed by the ICWA are meaningless.[51]

The court reasoned that "technical compliance with the act is not required if there has been substantial compliance with the notice provisions of the ICWA."[52] The court determined the tribe had actual notice, "and because we find no prejudice to either the tribe or the children by the failure to send the notice by registered mail, we hold that the overnight mailing substantially complied with the mailing requirements of the act."[53] But the court ultimately decided to remand because the social worker mailed the information only seven days before the termination hearing.[54]

---

[50] Id. at 132.

[51] Id. at 134.

[52] Id. at 134-35.

[53] Id. at 135.

[54] Id.

Here, the court received and considered evidence regarding the children's status. The father argues the court made no attempt at compliance because the court did not conduct the inquiry "outside the constraints of the adversarial process."[55] The father contends the court's determination that ICWA and WICWA did not apply was "limited only to the evidence that the parties chose to present."[56] But he fails to point to any evidence he was unable to present. The father elicited testimony from all the participants and presented argument to the court concerning the applicability of ICWA and WICWA.

Similarly, although the inquiry did not occur at the commencement of the hearing, the court addressed ICWA and WICWA before issuing its ruling on shelter care. The federal guidelines emphasize the importance of determining "at the outset of a State court child custody proceeding whether ICWA applies" because "[d]oing so promotes stability for Indian children and families and conserves resources by reducing the need for delays, duplication, appeals, and attendant disruptions."[57]

> If this inquiry is not timely, a child-custody proceeding may not comply with ICWA and thus may deny ICWA protections to Indian children and their families or, at the very least, cause inefficiencies. The failure to timely determine if ICWA applies also can generate unnecessary delays, as the court and the parties may need to redo certain processes or findings under the correct standard. This is

---

[55] Appellant's Reply Br. at 4.

[56] Id.

[57] BIA GUIDELINES, supra, at 9 (emphasis added).

inefficient for courts and parties, and can create delays and instability in placements for the Indian child.[58]

Here, consistent with RCW 13.34.065 of the Juvenile Court Act, the shelter care hearing occurred at the beginning of the dependency. There was no increased risk of delay across the course of the entire dependency proceeding just because the court did not conduct the inquiry precisely at the start of the shelter care hearing. The purpose of the initial inquiry at shelter care was accomplished here. The court received the available information about the children's Indian child status before making a shelter care decision.

We conclude the shelter care hearing in this case substantially complied with 25 C.F.R. § 23.107(a) and RCW 13.34.065(4)(h).

## II. "Reason to Know" an Indian Child is Involved

The father argues the court erred at the shelter care hearing when it determined ICWA and WICWA did not apply.

Whether ICWA and WICWA apply is a question of law we review de novo.[59] ICWA applies "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved."[60] Similarly, WICWA applies to "any involuntary child custody proceeding seeking the foster care placement of . . . a child in which the petitioning party or the court knows, or has

---

[58] Id. at 11.

[59] In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016).

[60] 25 U.S.C. § 1912(a) (emphasis added).

reason to know, that the child is or may be an Indian child as defined in this chapter."[61]

Generally, with regard to harmonizing ICWA and WICWA, our Supreme Court has determined the two "should be read as coextensive barring specific differences in their statutory language. In this way, . . . the acts will be interpreted as analogous and conterminous unless one provides greater protection, in which case the more protective act will supplant the less protective act."[62] Although WICWA and ICWA are not identical, WICWA's express intent was to clarify rather than expand ICWA.[63]

---

[61] RCW 13.38.070(1) (emphasis added).

[62] T.A.W., 186 Wn.2d at 844 (citing 25 U.S.C. § 1921 ("In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.")); 25 C.F.R. § 23.106 ("(a) The regulations in this subpart provide minimum Federal standards to ensure compliance with ICWA. (b) Under section 1921 of ICWA, where applicable State or other Federal law provides a higher standard of protection to the rights of the parent or Indian custodian than the protection accorded under the Act, ICWA requires the State or Federal court to apply the higher State or Federal standard."); BIA GUIDELINES, supra, at 7 ("ICWA establishes the minimum procedural and substantive standards that must be met, regardless of State law. The regulations provide a binding, consistent, nationwide interpretation of ICWA's minimum standards. ICWA displaces State laws and procedures that are less protective. Many States have their own laws applying to child welfare proceedings involving Indian children that establish protections beyond the minimum Federal standards. In those instances, the more protective State law applies." (footnote omitted)).

[63] RCW 13.38.030 ("It is the intent of the legislature that this chapter is a step in clarifying existing laws and codifying existing policies and practices."); see T.A.W., 186 Wn.2d at 844 n.9 ("This is presumably in reference, at least partially, to ICWA, given ICWA's and WICWA's governance of the same subject matter.").

Under both ICWA and WICWA, an "Indian child" is defined as an "unmarried and unemancipated Indian person who is under eighteen years of age and is either: (a) A member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[64] Both acts provide that only the tribe can make the ultimate determination as to whether an individual is a member of the tribe.

The federal regulations provide, "The determination by a [t]ribe of whether a child is a member, whether a child is eligible for membership, or whether a biological parent is a member, is solely within the jurisdiction and authority of the [t]ribe."[65] Similarly, WICWA provides, "A written determination by an Indian tribe that a child is a member of or eligible for membership in that tribe, or testimony by the tribe attesting to such status shall be conclusive that the child is an Indian child."[66]

To safeguard against the situation where a state court lacks a tribe's conclusive determination whether a child is an Indian child, the state court must

---

[64] RCW 13.38.040(7) (emphasis added); see also 25 U.S.C. § 1903(4) ("'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

[65] 25 C.F.R. § 23.108(b).

[66] RCW 13.38.070(3)(a); see also RCW 13.38.070(3)(b) ("A written determination by an Indian tribe that a child is not a member of or eligible for membership in that tribe, or testimony by the tribe attesting to such status shall be conclusive that the child is not a member or eligible for membership in that tribe.").

analyze whether there is reason to know a child is an Indian child. This safeguard honors the tribe's authority to conclusively determine tribal membership.[67]

The father argues our legislature's inclusion of "may be" "casts an even wider net" than the mere reason-to-know standard from ICWA.[68] We disagree. The language of WICWA mirrors 25 C.F.R. § 23.107(b), which provides:

> If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an "Indian child," the court must:
>
> (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the [t]ribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and
>
> (2) <u>Treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.</u>[69]

---

[67] <u>See</u> Conference of W. Att'ys Gen., AMERICAN INDIAN LAW DESKBOOK § 13:8, at 940-41 (2019 ed.) (DESKBOOK) ("[S]tate law-based evidentiary rules must be considered in establishing the tribal determination itself. Notice requirements in ICWA are designed to facilitate the opportunity for potentially affected tribes to make those determinations where foster care placement or parental rights termination proceedings are involved. A different factual standard—'reason to know'—controls whether such notice is statutorily compelled.").

[68] Appellant's Br. at 13.

[69] (Emphasis added.); <u>see</u> DESKBOOK, <u>supra</u>, at 959-60 ("The arguable breadth of some of the 'reason to know' criteria, as well as the requirement to treat the child as an Indian child until proved otherwise, is tempered by the definition of 'Indian child,' which requires tribal membership or eligibility for membership together with actual membership of a biological parent, and not mere Indian ancestry.").

Our legislature's inclusion of "may be" in WICWA and the above federal regulation address the situation where there is evidence that satisfies the definition of "Indian child" but that evidence has not been confirmed or rejected by the tribe. As here, where no one asserts the child is a tribal member, ICWA and WICWA apply only if the child is eligible for tribal membership and one of the child's biological parents is a tribal member. A parent's belief that the child is eligible for tribal membership without evidence that one of the parents is a tribal member is insufficient to establish ICWA and WICWA apply to the child.

It is also important to note that the statutory definition of "Indian child" turns on membership rather than enrollment. "'Member' and 'membership' means a determination by an Indian tribe that a person is a member or eligible for membership in that Indian tribe."[70] Depending on the practices of the specific tribe, enrollment and membership may be but are not necessarily synonymous.

> [M]any tribes require a person to register or enroll in order to be considered a member of the tribe, but some do not and automatically include a person as a member if the person is descended from a tribal member who was listed on the tribal rolls as of a specific date. Accordingly, the absence of enrollment alone may not necessarily be determinative of whether a person is a member of a tribe.[71]

Here, at the shelter care hearing, the State asked the social worker, "And what investigation have you done?"; the social worker responded,

> I called the Tlingit and Haida Indian tribes of Alaska, and they gave me information that the maternal grandmother is an enrolled

---

[70] RCW 13.38.040(12).

[71] In re Termination of Parental Rights to Arianna R.G., 259 Wis. 2d 563, 575-76, 657 N.W.2d 363 (2003).

member, but the mother is not enrolled, and the children are not enrolled. And to my knowledge, the father is not enrolled in a federally-recognized tribe either.[72]

The social worker and the father testified it was possible the children were eligible for tribal membership.[73] The mother testified she and the children were "eligible for American Indian tribal membership" with the Tlingit and Haida Tribes.[74] But she also testified that she was not an enrolled member of a federally recognized tribe.[75]

In the written shelter care order, the court found, "[T]here is not a reason to know the child is an Indian child."[76] "Mother and father are not enrolled members in a federally recognized tribe. Maternal grandmother is enrolled member, Department continuing to investigate. Mother believes she's eligible for tribal membership."[77]

The father relies on In re Dependency of T.L.G. to argue the parents' assertion of Indian heritage is enough to establish a reason to know.[78] In T.L.G., before the Department filed dependency petitions for the two children, the mother

---

[72] RP (July 2, 2018) at 11-12.

[73] Id. at 23; RP (July 3, 2018) at 67.

[74] RP (July 3, 2018) at 88.

[75] Id. at 90.

[76] CP at 10.

[77] Id.

[78] 126 Wn. App. 181, 108 P.3d 156 (2005).

disclosed possible Indian heritage.[79] The mother was adopted as an infant but had been told her biological father was "full-blooded Cherokee."[80] In the dependency petitions and the agreed dependency orders, the Department asserted the children were not Indian children.[81] The mother did not challenge these assertions.[82]

When the children's potential Indian status came up at a permanency planning hearing, the court ordered the Department to investigate.[83] The caseworker told the mother the Department needed her adoption records to investigate, but the mother was unable to get the records.[84] Ultimately, neither the Department nor the court provided notice to the children's potential tribes. At the termination trial, the court concluded ICWA did not apply because the mother was not an enrolled member of a tribe and she did not assist the Department's investigation.[85] The mother appealed.

On appeal, this court discussed the importance of the notice requirements under ICWA: "One reason notice is a key component of ICWA is to ensure that tribes will have the opportunity to assert their rights independent of the parents or

---

[79] Id. at 186.

[80] Id.

[81] Id. at 189.

[82] Id.

[83] Id.

[84] Id. at 190.

[85] Id.

state agency."[86] This court emphasized, "[N]o formal notice was given to the tribe or the [BIA], even after the court ordered [the Department] to investigate the children's Indian heritage."[87] In the context of the Department's failure to investigate, this court stated:

> [T]ribal enrollment is not the only means of establishing Indian heritage. Nor is [the mother's] belief that she is not a tribal member dispositive. Tribes control the rules of their membership, and whether [the mother] is a member is a question only the tribe can definitively answer.[88]

This court determined the trial court "erred in failing to ensure notice of the termination proceedings was given to the tribe or the [BIA]."[89]

T.L.G. correctly identifies that only the tribe can definitively answer whether an individual is a member of that tribe. But T.L.G. does not stand for the broad proposition that assertion of Indian heritage alone establishes a reason to know. Rather, T.L.G. exemplifies the importance of the Department promptly investigating and contacting potential tribes when a parent asserts Indian heritage. When the Department fails to reach out to potential tribes, as in T.L.G., those tribes are unable to make a conclusive determination concerning membership.

T.L.G. is factually distinguishable from this case. In T.L.G., the mother asserted Indian heritage at the commencement of the dependency proceeding, but

---

[86] Id. at 191.

[87] Id. at 192.

[88] Id. at 191 (emphasis added).

[89] Id. at 192.

the Department failed to investigate at any point before the termination trial. And the mother appealed the termination order. Here, both parents asserted Indian heritage prior to the shelter care hearing, and the Department started to investigate before the hearing. And here, we are concerned with the preliminary shelter care order.

The applicability of T.L.G. is further limited because this court issued its opinion before the BIA updated the federal regulations and guidelines. A review of the updated regulations and guidelines counsels against reading T.L.G. as undercutting the precise definitions of an Indian child from ICWA and WICWA.

The federal regulations answer the question of how a State court should determine if there is a reason to know a child is an Indian child:

> A court, upon conducting the inquiry required . . . , has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if:
>
> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian [t]ribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian [t]ribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
>
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
>
> (5) The court is informed that the child is or has been a ward of a [t]ribal court; or

(6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian [t]ribe.[90]

The BIA's comments accompanying the regulation provide:

The rule reflects the statutory definition of "Indian child," which is based on the child's political ties to a federally recognized Indian [t]ribe, either by virtue of the child's own citizenship in the [t]ribe, or through a biological parent's citizenship and the child's eligibility for citizenship. ICWA does not apply simply based on a child or parent's Indian ancestry. Instead, there must be a political relationship to the [t]ribe.

Most [t]ribes require that individuals apply for citizenship and demonstrate how they meet that [t]ribe's membership criteria. Congress recognized that there may not have been an opportunity for an infant or minor child to become a citizen of a [t]ribe prior to the child-custody proceeding, and found that Congress had the power to act for those children's protection given the political tie to the [t]ribe through parental citizenship and the child's own eligibility.[91]

An assertion of Indian heritage triggers the Department's duty to investigate.[92] But an assertion of Indian heritage, absent other evidence, does not

---

[90] 25 C.F.R. § 23.107(c).

[91] BIA GUIDELINES, supra, at 10 (emphasis added).

[92] See RCW 13.38.050 ("Any party seeking the foster care placement of, termination of parental rights over, or the adoption of a child must make a good faith effort to determine whether the child is an Indian child. This shall be done by consultation with the child's parent or parents, any person who has custody of the child or with whom the child resides, and any other person that reasonably can be expected to have information regarding the child's possible membership or eligibility for membership in an Indian tribe to determine if the child is an Indian child, and by contacting any Indian tribe in which the child may be a member or may be eligible for membership. Preliminary contacts for the purpose of making a good faith effort to determine a child's possible Indian status, do not constitute legal notice as required by RCW 13.38.070.") (emphasis added).

establish a reason to know that a child is an Indian child. With regard to the Department's duty to investigate, the federal guidelines provide:

> When in doubt, it is better to conduct further investigation into a child's status early in the case; this establishes which laws will apply to the case and minimizes the potential for delays or disrupted placements in the future. States or courts may choose to require additional investigation into whether there is a reason to know the child is an Indian child.[93]

Here, in the dependency petition, the Department indicated the mother had asserted Tlingit-Haida and Cherokee heritage and the father had asserted heritage with the Confederated Tribes of the Umatilla.[94] Before the shelter care hearing, the Department called the Klawock Cooperative Association to investigate the mother's Tlingit-Haida heritage.[95] The Department also indicated, "Further inquiry and notification to tribes ongoing."[96]

At the shelter care hearing, the social worker testified that he called the Tlingit and Haida Indian tribes of Alaska, and they clarified the maternal grandmother was an enrolled member, but neither the mother nor the children were enrolled.[97] The social worker also testified, "[T]o my knowledge, the father is not enrolled in a federally-recognized tribe either."[98] It is unclear whether the

---

[93] BIA GUIDELINES, supra, at 11.

[94] CP at 2.

[95] Id.

[96] Id.

[97] RP (July 2, 2018) at 11.

[98] Id. at 11-12.

Department investigated the mother's Cherokee heritage or the father's Umatilla heritage prior to the shelter care hearing. In the shelter care order, the court found the Department was continuing to investigate.[99]

After the shelter care hearing, the Department sent inquiry letters to the Confederated Tribes of the Umatilla, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians in Oklahoma, and the Central Council Tlingit and Haida Indian Tribes of Alaska.

Consistent with RCW 13.38.050, the Department must conduct a good faith investigation into all indicated tribes, but the father cites no authority that the Department must initiate contact with all potential tribes before the 72-hour shelter care hearing. The Department's Indian child welfare policy and procedures similarly recognize it typically takes more than 72 hours to undertake and complete a detailed investigation:

> 3. When a child may have Indian ancestry and be affiliated with a federally recognized tribe, [Children's Administration] caseworkers will:
>
>     . . . .
>
>     b. Send a Native American Inquiry Referral (NAIR) to the Native American Inquiry Unit[.]
>
>     . . . .
>
> 4. Upon receipt of the referral, the NAIR unit will send to the identified tribe(s):

---

[99] CP at 10.

a. First inquiry letter within 30 days from Indian ancestry identification.[100]

And here, the father does not challenge the court's finding in the shelter care order that the Department "made a good faith effort to determine whether the child is an Indian child."[101]

Ultimately, the court did not err when it determined at the shelter care hearing that there was no reason to know ICWA and WICWA applied to Z.G. and M.G. Specifically, the information before the court at the shelter care hearing as a result of the Department's good faith investigation did not establish a reason to know Z.G. and M.G. were Indian children. Because there was no reason to know, the normal serious threat of substantial harm standard applied at the shelter care hearing.[102]

---

[100] Dep't of Children, Youth & Families, Indian Child Welfare Policies and Procedures: Inquiry Verification of Child's Indian Status (Sept. 12, 2016), https://www.dcyf.wa.gov/indian-child-welfare-policies-and-procedures/3-inquiry-and-verification-childs-indian-status [https://perma.cc/9732-Z86J].

[101] CP at 10.

[102] See RCW 13.34.065(5)(a) ("The court shall release a child alleged to be dependent to the care, custody, and control of the child's parent, guardian, or legal custodian unless the court finds there is reasonable cause to believe that: (i) After consideration of the specific services that have been provided, reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home; and . . . (B) The release of such child would present a serious threat of substantial harm to such child." (emphasis added)).

III. Was the 72-hour Shelter Care Hearing an "Emergency Proceeding" for Purposes of ICWA and WICWA?

The briefing touches on the heightened standards that would apply if there was reason to know Z.G. and M.G. are Indian children. For example, before the court orders foster care placement or termination of parental rights, ICWA and WICWA require a 10-day notice to the parents and the tribe.[103] ICWA and WICWA also require proof that "active efforts have been made to provide remedial services . . . designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."[104]

And ICWA and WICWA apply to child custody proceedings. A child custody proceeding includes foster care placement, termination of parental rights, preadoptive placement, and adoptive placement.[105] A foster care placement is "any action removing an Indian child from his or her parent . . . for temporary placement in a foster home . . . where the parent . . . cannot have the child returned upon demand, but where parental rights have not been terminated."[106]

But the federal regulations expressly exclude an emergency proceeding from the definition of "child-custody proceeding."[107] And the regulations define an emergency proceeding to include "any court action that involves an emergency

_____

[103] 25 U.S.C. § 1912(a); RCW 13.38.070(1).
[104] 25 U.S.C. § 1912(d); RCW 13.38.130(1).
[105] 25 U.S.C. § 1903(1); RCW 13.38.040(3).
[106] 25 U.S.C. § 1903(1); RCW 13.38.040(3).
[107] 25 C.F.R. § 23.2 ("other than an emergency proceeding").

removal or emergency placement of an Indian child."[108] Furthermore, the guidelines acknowledge that states use different terminology for emergency hearings, including "shelter hearing":

> While States use different terminology (e.g., preliminary protective hearing, shelter hearing) for emergency hearings, the regulatory definition of emergency proceedings is intended to cover such proceedings as may be necessary to prevent imminent physical damage or harm to the child.[109]

The federal regulations also provide a table listing which provisions of ICWA apply to various types of proceedings.[110] 25 C.F.R. § 23.104 expressly provides that the 10-day notice requirement to the parents and tribe and the requirement to show active efforts do not apply to an emergency placement.[111]

Although WICWA does not define "emergency proceeding," WICWA does recognize the importance of emergency placements regarding an Indian child:

> Notwithstanding any other provision of federal or state law, nothing shall be construed to prevent the department or law enforcement from the emergency removal of an Indian child who is a resident of or is domiciled on an Indian reservation, but is temporarily located off the reservation, from his or her parent or Indian custodian or the emergency placement of such child in a foster home, under applicable state law, to prevent imminent physical damage or harm to the child.[112]

---

[108] Id.

[109] BIA GUIDELINES, supra, at 23 (emphasis added).

[110] 25 C.F.R. § 23.104.

[111] See also RCW 13.38.140(3), distinguishing the formal 10-day notice required for dependency and termination hearings from the pragmatic notice to the tribe before removal of an Indian child "[w]hen the nature of the emergency allows."

[112] RCW 13.38.140(1); see also 25 U.S.C. § 1922.

28

It would be inconsistent with the above provisions to require a 10-day notice or active efforts at an imminent harm 72-hour shelter care hearing.[113]

Z.G. and M.G. were placed in law enforcement protective custody by the Kent Police Department due to concerns of neglect and unsanitary living conditions.[114] Under RCW 26.44.050,

> [a] law enforcement officer may take, or cause to be taken, a child into custody without a court order if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order pursuant to RCW 13.34.050.

"A child taken into custody pursuant to RCW 13.34.050 or 26.44.050 shall be immediately placed in shelter care."[115] A shelter care hearing must occur within 72 hours to address continued shelter care.[116] "The primary purpose of the shelter care hearing is to determine whether the child can be immediately and safely returned home while the adjudication of the dependency is pending."[117]

---

[113] Additionally, we note that under ICWA and WICWA, the removal standard for a nonemergency foster care placement is "that the continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e); RCW 13.38.130(2). But in the context of an emergency placement, the removal standard and the procedural protections are altered (e.g., no active efforts, no 10-day notice).

[114] CP at 4.

[115] RCW 13.34.060(1).

[116] Id. ("No child may be held longer than seventy-two hours, excluding Saturdays, Sundays, and holidays, after such child is taken into custody unless a court order has been entered for continued shelter care.").

[117] RCW 13.34.065(1)(a).

29

Here, this typical 72-hour shelter care hearing following a law enforcement removal qualified as an emergency proceeding.[118]

Even assuming there was a reason to know Z.G. and M.G. were Indian children, heightened protections such as a 10-day notice and active efforts requirements would not have applied to Z.G. and M.G.'s 72-hour shelter care hearing.[119]

## CONCLUSION

ICWA and WICWA require a court conducting a 72-hour shelter care hearing to inquire whether the child is or may be an Indian child. A court substantially complies with that requirement if prior to the hearing the Department has begun a good faith investigation into the child's Indian status, the parties elicit the relevant evidence during the hearing, and the court considers that evidence before ruling on shelter care.

The reason-to-know standard turns on evidence that the child is a tribal member, or the child is eligible for tribal membership and a biological parent is a

---

[118] We note that the form shelter care order does not include a box or specific space to find or explain the nature of the imminent risk of physical harm contemplated by RCW 13.38.140, 25 U.S.C. § 1922, and 25 C.F.R. § 23.113.

[119] See DESKBOOK, supra, at 915 ("[P]reliminary protective hearings held in many dependency or child-in-need-of-care proceedings may be 'emergency proceedings' under ICWA and therefore are not subject to many of ICWA's procedural requirements, such as the provision that no hearing can take place until at least ten days after the parents, Indian custodian, or tribe has received notice."); see Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,819 (June 14, 2016) (sec. IV(H)(4) cmt.) (emergency hearings are "known in various States as 72-hour hearings, detention hearings, shelter care hearings, and other terms").

tribal member. If there is a reason to know a child is or may be an Indian child, then ICWA and WICWA require the court to treat the child as an Indian child pending a conclusive membership determination by a tribe. A parent's mere assertion of Indian heritage absent other evidence is not enough to establish a reason to know a child is or may be an Indian child. Because the Department's good faith investigation before the shelter care hearing did not reveal evidence that a parent or a child was a tribal member, the court did not err in concluding that there was no reason to know the children were Indian children based on the evidence available at the time of the shelter care hearing. Of course, the Department has an obligation to continue its investigation before proceeding to a dependency or termination hearing.

Even if there is reason to know a child is an Indian child, the heightened protections of a 10-day notice and active efforts have no application to an imminent harm shelter care hearing because it is an emergency placement.

Therefore, we affirm.

WE CONCUR:

_____

_____        _____
Chun, J.                        Appelwick, C.J.

31